## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| YANEL GREENE, | )   Docket No. 1:17-cr-00012-NT-1 |
| | ) |
| Defendant. | ) |

### ORDER ON MOTION FOR COMPASSIONATE RELEASE

Yanel Greene filed a *pro se* motion for compassionate release on May 5, 2020. Pro Se Motion (ECF No. 281). After reviewing his motion, I initially issued an order to show cause why the motion should not be denied. Order to Show Cause (ECF No. 285). Mr. Greene filed a supplement to his motion on May 19, 2020 (ECF No. 286), and he responded to my order to show cause on June 2, 2020 (ECF No. 288). After reviewing Mr. Greene's filings as well as two briefs in opposition filed by the Government (ECF Nos. 283, 287), I appointed counsel to represent Mr. Greene because of "the rapidly escalating numbers of individuals infected with COVID-19" at his facility. Order (ECF No. 289). Appointed counsel filed the pending amended motion for compassionate release, which the Government opposes. *See* Gov't Opp'n (ECF No. 307). I have also considered Mr. Greene's reply brief. (ECF No. 308). The amended motion for compassionate release (ECF No. 303) is **DENIED**.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 25, 2017, Mr. Greene pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute controlled substances, including

heroin, cocaine base, and oxycodone. Minute Entry (ECF No. 174); Indictment (ECF No. 2). On May 2, 2018, I sentenced Mr. Greene to 96 months imprisonment and three years of supervised release. By my calculations, he has served nearly 26 months. The Bureau of Prisons ("**BOP**"), having considered deductions for good conduct, lists a projected release date of April 14, 2025. Accordingly, Mr. Greene has served approximately 27% of the sentence I imposed and approximately 31% of his sentence if good-time deductions are considered.

At the time of his sentencing, Mr. Greene, who is now 40 years old, reported that he suffered from back pain, resulting from four car accidents. Presentence Investigation Report ¶ 41 ("**PSR**") (ECF No. 284-1). The presentence report noted that Mr. Greene obtained a medical marijuana license to treat his back pain and he also regularly saw a chiropractor. PSR ¶ 41. Mr. Greene now reports that he is a former smoker and that he suffers from prediabetes. Am. Mot. 6–7.

BOP lists Mr. Greene as a Care Level 1 inmate for both his physical and mental health. United States Probation Memorandum 1 (ECF No. 284). BOP defines Care Level 1 as follows:

- Care Level 1 inmates are less than 70 years of age and are generally healthy.

- They may have limited medical needs that can be easily managed by clinician evaluations every 6–12 months.

    **Example Conditions:** Mild asthma, diet-controlled diabetes, stable HIV patients not requiring medications, well-controlled hyperlipidemia or hypertension, etc.

*Care Level Classification for Medical and Mental Health Conditions or Disabilities*, Federal Bureau of Prisons Clinical Guidance, May 2019, available at

https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited August 4, 2020).

FMC Devens is reporting that, as of August 4, 2020, one inmate has an active COVID-19 infection. There have been two inmate deaths from COVID-19 at FMC Devens, and 50 inmates and six staff members have recovered from the virus.

## LEGAL STANDARD

Section 3582(c)(1)(A) provides that:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> (ii) and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).

The United States Sentencing Commission's policy statements on compassionate release are found at § 1B1.13 of the sentencing guidelines. Section 1B1.13 provides:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

>   (1)(A) Extraordinary and compelling reasons warrant the reduction;
>
>   . . . .
>
>   (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>   (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

The Sentencing Commission elaborates on what constitutes "extraordinary and compelling reasons" in the Commentary to § 1B1.13. In discussing medical-based reasons, the Commission writes:

>   (A)   **Medical Condition of the Defendant.—**
>
>   >   (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>   >
>   >   (ii)  The defendant is —
>   >
>   >   >   (I)   suffering from a serious physical or medical condition,
>   >   >   (II)  suffering from a serious functional or cognitive impairment, or
>   >   >   (III) experiencing deteriorating physical or mental health because of the aging process,
>   >
>   >   that substantially diminishes the ability of the defendant to provide self-care within the environment of a

4

>   correctional facility and from which he or she is not expected to recover.
>
>   …
>
> (C) **Family Circumstances.**—
>
>   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
>   (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

U.S.S.G. § 1B1.13, Application Note 1. The Note addresses age-based reasons in subdivisions (B), and then provides: "**Other Reasons.**—As determined by the Director of the Bureau of Prisons,[1] there exists in the defendant's case an

---

[1] Prior to the passage of the First Step Act of 2018 ("**First Step Act**"), only the Director of the Bureau of Prisons could move for modification of a sentence. In December of 2018, Congress amended § 3582(c) to allow inmates to seek a modification of sentence from the courts directly "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (codified at 18 U.S.C. § 3582(c)(1)(A)). Because the Sentencing Commission lacks a quorum, it has not considered whether to amend the commentary to § 1B1.13, in light of the First Step Act. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019).

Subdivision (D) to Application Note 1 specifies that "the Director of the Bureau of Prisons" may decide if other extraordinary and compelling circumstances exist that warrant compassionate release. U.S.S.G. § 1B1.13, Application Note 1. Following the enactment of the First Step Act, district courts have split on the question of whether it is appropriate for courts to "exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release." *Beck*, 425 F. Supp. 3d at 579–80, 583. This Court and two others in the First Circuit have concluded that courts may consider other extraordinary and compelling reasons for compassionate release, notwithstanding the language of Subdivision (D) to Advisory Comment 1, after the First Step Act. *United States v. Fox*, 2:14-cr-03-DBH, 2019 WL 3046086, at *2–3 (D. Me. July 11, 2019) (collecting cases, discussing split of authority, and "agree[ing] with the courts that have said that the Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive given the statutory change."); *see United States v. Rich*, No. 17-cr-094-LM, 2020 WL 2949365, at *2 n.1 (D.N.H. June 3, 2020) (same); *United States v. Pena*, No. CR 16-10236-MLW, 2020 WL 2798259, at *8 (D. Mass. May 29, 2020) (describing the requirement of subdivision D that the BOP determine that an extraordinary and compelling reason exists as "vestigial and inoperative" after the First Step Act); *see also United States v. Maher*, No. 2:04-cr-00093-GZS, 2020 WL 390884, at *3 (D. Me. Jan. 22, 2020) (declining to exercise the court's discretion under subdivision (D) to conclude that another reason warrants compassionate release). District courts outside of the First Circuit are split on the question. *Compare, e.g., United*

5

extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*

## ANALYSIS

As the compassionate release statute and guidelines indicate, I may modify a sentence of imprisonment if I find that: (1) extraordinary and compelling reasons warrant modification, (2) modification accords with the § 3553(a) sentencing factors, (3) the petitioner is not a danger to the safety of any other person or the community, and (4) modification is consistent with applicable policy statements of the Sentencing Commission.

Mr. Greene does not present extraordinary and compelling reasons that warrant compassionate release. First, Mr. Greene has not established that he has an elevated risk of severe illness from COVID-19. Mr. Greene points to a diagnosis of prediabetes, but the CDC has only advised that patients with type II diabetes face an increased risk from COVID-19. *See* Centers for Disease Control and Prevention, "Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-

---

*States v. Lisi*, 440 F. Supp. 3d 246, 250 (S.D.N.Y. 2020) ("[T]he Court finds that the majority of district courts to consider the question have found that the [First Step Act] grant[s] this Court the same discretion as that previously give to the BOP Director, and therefore the Court may independently evaluate whether Lisi has raised an extraordinary and compelling reason for compassionate release."), *and Beck,* 425 F. Supp. 3d at 579–80, 583 (same), *with United States v. Garcia*, No. 4:05-cr-40098, 2020 WL 2039227, at *5 (C.D. Ill. Apr. 28, 2020) (concluding that the definition of "extraordinary and compelling reasons" does not directly conflict with the text of the First Step Act and "therefore conclud[ing that] the policy statement has not been overridden by the First Step Act to allow courts the same discretion conferred to the BOP Director by the Sentencing Commission's policy statement"), *and United States v. Sandoval*, No. CR14-5105RBL, 2020 WL 3077152, at *4 (W.D. Wash. June 10, 2020) (same) (citing ten cases).

medical-conditions.html ("**CDC COVID-19 webpage**") (last visited August 4, 2020). The CDC has not provided any similar guidance that prediabetes increases that risk. Mr. Greene also reports that he previously smoked. The CDC advises that being a "former cigarette smoker *may* increase your risk of severe illness from COVID-19." CDC COVID-19 webpage (emphasis added). Given that Mr. Greene is only 40 years old and does not present with medical conditions that certainly elevate his risk from COVID-19, I do not find that he has established extraordinary and compelling grounds for release because he is a former smoker.

The decreasing number of infections at FMC Devens also weighs against a finding that extraordinary and compelling circumstances warrant release. FMC Devens reports, as of August 4, 2020, that there is one inmate and one staff member with active COVID-19 infections and that there have been 50 inmates and six staff who have recovered. Bureau of Prisons, COVID-19 Cases, available at https://www.bop.gov/coronavirus/ (last visited August 4, 2020). Two inmates have died. *Id.* COVID-19 hit FMC Devens hard, but active case numbers are now down considerably from earlier levels.[2] Testing capacity at FMC Devens has increased,[3] and it appears that FMC Devens's isolation strategies have been helpful in containing

---

[2] As of June 9, 2020, FMC Devens was reporting 42 open inmate cases of COVID-19 and five staff cases. Decl. of Megan Shaw, M.D., Clinical Director ¶ 5 (ECF No. 296-1); *see* Order (ECF No. 289) (noting that on June 5, 2020, "the Bureau of Prisons website reports that there are fifty inmates and five staff with confirmed active cases").

[3] As of August 4, 2020, FMC Devens is reporting that 900 tests have been performed with 51 positive results. Bureau of Prisons, COVID-19 Inmate Test Information, available at https://www.bop.gov/coronavirus/ (last visited August 4, 2020). BOP reports a population of 906 inmates. Bureau of Prisons, FMC Devens, available at https://www.bop.gov/locations/institutions/dev/ (last visited August 4, 2020).

7

the spread of COVID-19. Decl. of Megan Shaw, M.D., Clinical Director (ECF No. 296-1). Even considering the increased risk that Mr. Greene faces because he works as an orderly in the main FMC Devens building where COVID-19 testing occurs, the situation at FMC Devens has improved significantly from when I appointed counsel for Mr. Greene. It appears that the BOP has acted responsibly to contain the spread of the disease within FMC Devens. At this time, the situation at the facility does not weigh in favor of finding an extraordinary and compelling circumstance for release.

Mr. Greene also argues that his need to care for his elderly and disabled mother and his children contributes to the extraordinary and compelling circumstances that warrant release. Am. Mot. 8–10. The only family circumstances that warrant early release under the Sentencing Guidelines are "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13, Application Note 1(C). The mother of Mr. Greene's children is currently caring for them, but she has left the children alone on at least one occasion and she travels with them to New York City on a roughly weekly basis. If released, Mr. Greene represents that he would live with his daughters' grandmother and he would be better positioned to take care of the children. I agree with the Government, however, that a defendant's children suffering during their parent's incarceration is a sadly ordinary circumstance. *See* Gov't Opp'n 3. While regular interstate travel during the COVID-

19 pandemic presents risks, I cannot conclude that it rises to the level of the incapacitation of the children's parent. *See* U.S.S.G. § 1B1.13, Application Note 1(C).

Mr. Greene also wishes to care for his mother, who is blind, has a serious heart condition, and has been cut off from nearly all of the support she received from her community prior to the COVID-19 pandemic. As a result, she sometimes runs out of food and has gone for months without her heart medication. Am. Mot. 8. Mr. Greene's mother currently lives in South Carolina, and he proposes to bring her to Maine to care for her if he is released. Am. Mot. 8–9. Generally, "[w]hile certainly admirable, a desire to help care for one's elderly parents does not qualify as an 'extraordinary and compelling reason' for release under U.S.S.G. § 1B1.13." *United States v. Goldberg*, No. CR 12-180 (BAH), 2020 WL 1853298, at *4 (D.D.C. Apr. 13, 2020). Although at least one court has granted compassionate release to a defendant to allow him to care for his seriously ailing parent, *United States v. Bucci*, 409 F. Supp. 3d 1 (D. Mass. 2019), in that case the defendant was the "only potential caregiver for his ailing mother." *See id.* at 2. Mr. Greene's mother has two other children who, as of 2018, both lived in New York. PSR ¶ 36. Mr. Greene has not established that his siblings are unable to care for their mother. Assuming that a need to care for an elderly and disabled parent may be grounds for compassionate release in some circumstances, *see Bucci*, 409 F. Supp. 3d. at 2, Mr. Greene has not shown that he is the only potential caregiver for his mother.

Because Mr. Greene has not established extraordinary and compelling reasons for his release, I do not go on to address the § 3553(a) factors, the safety of the community, or whether Mr. Greene has presented an acceptable release plan.[4]

## CONCLUSION

For the foregoing reasons, the Amended Motion for Compassionate Release is **DENIED**.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated: August 4, 2020

---

[4] Nor do I consider whether the exhaustion requirement bars Mr. Greene from presenting new arguments for release that he did not present to the warden in his administrative request for release. *See* Gov't Opp'n 1.